Veterans Affairs. Ms. Booth? Thank you, Your Honor. For the record, my name is Sandra Booth. I am appearing on behalf of the appellant, John L. Lusk. Mr. Lusk appealed for a DVA decision which denied his claim for an enhanced compensation, a special monthly compensation provision specifically in the terms of House Bill. He presented to the CABC a legal argument that the Board had misconstrued the controlling regulation and implemented, I'm sorry, the controlling statute 1114 in the implementing regulations. The CABC did not reach that issue instead of fronting the DVA on the grounds that there was a plausible basis in the record for the Board's decision. The Court in this event has jurisdiction under Section 292A and also under the Lindau case holding that where the decision or an issue has been presented but not decided and is relied upon for purposes of the Court's jurisdiction. Isn't the entire case though the issue as to what is meant by permanently housebound? I'm sorry? Isn't the issue really what is meant by the section of the statute saying permanently housebound? Permanently housebound is the pertinent language with respect to the intermediate rate which we commonly refer to as the housebound rate. I don't think that's entirely correct, entirely accurate. With respect to the aid and attendance, the issue is whether or not that regulation, the regulation which does define aid and attendance, includes the additional criteria which the Board layered onto its analysis of Mr. Lusk's case. What was the error in the way that they treated the statute? With respect... The error of law, of course. We're not talking about any facts. Correct. I would like to make the claim that we are not questioning the Court's or the Board's fact-finding but rather we are addressing whether the Board and the Court in its declination to address these issues misinterpreted the current legal standard. With respect to the housebound, and of course they are two separate benefits, the housebound being a lower monthly benefit, the aid and attendance having a higher... Yeah, I understand that. But where did the Court go astray on substantially confined and then the permanently housebound component? The substantially confined is not defined by the statute or the regulation. This Court in Roberson addressed substantially in the context of a TDIU claim and held that whatever it means, it means something less than total. But when you're working with a statutory term like substantially, you're already into factual application, aren't you? Which, of course, we're not going to review here.  But the Board of Veterans' Appeals looked to whether the veteran's psychiatric disability prevented him from leaving his home because permanently housebound is defined as substantially confined to the home or immediate premises. The Board confined its analysis to whether or not the veteran was prevented from leaving his home. That is error. That is legal error because it doesn't address the correct criteria for substantially confined. Number one, it looks to... it essentially requires a total confinement and substantially imports something less. Is that what the Board and the Court in affirming it did, though? Instead, they just looked at a whole totality of activities and said, these really aren't consistent with being either permanently housebound or substantially confined. Well, I think the Hull case from the CAVC last week, which has been submitted as supplemental authority, is persuasive, of course not controlling on this Court, but particularly pertinent is the Senate report which Hull addressed or Hull referenced to. And that Senate report dated 1960 when the housebound statute was enacted, the housebound that was added to the law, includes a VA administrator letter, the VA administrator being the top VA official at that time. And his analysis, I think, really sheds light on where the error in the Board and the Court's decision is, and that is the VA administrator addressed the fact that a veteran may be totally disabled and yet still, under VA law, be capable of earning an income. It's contemplated that the veteran may well do that, despite his total disability. There are some veterans who cannot do that, and their disabilities are so severe that they qualify for VA attendance. The housebound status was added to the law because Congress recognized and the VA recognized that there are some veterans who are so disabled by their service-connected disability they are incapable of earning an income. They nevertheless do not meet the very high aid and attendance requirements, and therefore there was a need to add an intermediate level for those veterans who are totally disabled and unable to earn an income. The inability to earn an income, I believe, is the key factor which addresses what kind of which controls the analysis of substantially confined. In other words, the veteran, at least in theory, might be able to depart his home any number of times, but the important question, the key question is why, or what are the circumstances? If he's being carried out every day on a transport of some sort, how does that contribute to his ability to earn an income? Does that affect his ability to earn an income, certainly leaving the house? And that, I think, is what was motivating the CAVC, although it's not really explained in detail, when it held that leaving the home for a medical appointment, the bare fact of doing that does not interfere with the notion of being substantially confined. In a psychiatric case, I think across the board with housebound and aid and attendance, it gets a little, it doesn't fit well into the traditional analysis that we can readily see where the disability is a physical disability. In this veteran's case, we contend what the court or what the board had to consider was while, yes, he was able to leave the home, he was not able to leave under his own steam. He is essentially substantially confined because he cannot freely come and go due to the nature of his paranoia, his fear that others are going to hurt him. But isn't that a factual determination on this group? Are you backing up into a fact determination? I think it has to be addressed in light of the correct standard. We're not asking you, this court, to make that decision, but rather we're saying that the Board of Veterans' Appeals, by limiting its consideration to really kind of an arithmetic analysis, the veteran departed at various times without really saying how many times, and also this claim has been pending since 1993. The board's analysis took snapshots at various times without considering all of the veteran's downtimes. So certainly those facts would all have to be bugged in to what the correct legal criterion is. And for purposes of substantially defined, Mr. Lusk will contend that the board can't reach that decision just based on the bare fact that the veteran has departed his home or the immediate premises. The VA must take into consideration, because this is the very purpose of the housebound benefit, the effect on the veteran's ability to earn an income. If indeed that departure suggests that he does have an ability to earn an income, which of course is a factual matter that the VA has to consider in the first instance, neither the board nor the court address that issue, then certainly that would suggest that he is not substantially confined. But does that issue turn on whether or not the veteran can earn an income? Because he could be substantially confined and still earn an income at home. Well, I'm looking at, you know, there may be a circumstance where that would be, although before he would ever qualify for substantially, for consideration for the housebound benefit, he already has been determined to be so severely disabled that he's totally disabled. Now, if the veteran is able to earn an income at home, that's a good question. I hadn't thought of it. I thought I had covered the bases in trying to figure out what circumstances. I think that would be a circumstance, certainly, that the board would be entitled to consider, considering that the very purpose of the housebound benefit is to address inability to earn an income among totally disabled veterans who do not also meet the very high aid and attendance. So you really don't want to turn on whether or not he can leave the house to earn an income because the earned income could be made at home where he would be substantially confined. Well, we're saying that the substantially confined analysis must take into consideration the veteran's ability to depart on his ability to earn an income. There has to be some kind of a nexus there because that's the very point that the housebound status, the creation of that was intended to address. What would you do with – what I'm having trouble with is exactly the issue that Judge Galliardo's question, I think, highlights, which is there doesn't seem to be a very close congruence between the ability to earn an income and the housebound term that's used in the statute. For example, suppose you have somebody who can move freely in and out of the house, but for whatever reasons, let's say just emotional difficulties or whatever, simply can't hold a job, but has absolutely no difficulty going out whenever he or she wants, driving himself or herself around, can move in many respects in the community quite freely, and wouldn't be someone that any of us would call housebound, but nonetheless is unable to earn an income. Would that person fall within this statute as you see it? I don't think that he would, Your Honor. If we're looking only at the inability to earn an income and the one that's addressed partially under the total disability rating to start with, I think the veteran would then have to either be addressed under the aid and attendance provisions, and that circumstance may or may not fall into the aid and attendance, depending on what the additional facts are. But I don't think it's going to come into the substantially confined, because he is in fact not confined if he is able to freely come and go. Right. And so even if he's incapable of holding a job, that would be essentially irrelevant if he's able to come and go relatively freely. Well, it is, I believe, because I think that's what the regulation was intended to address. It does not particularly address every possible inability to earn income status. It does, and it's intended to address those who fall within a particular criteria of being substantially confined. And the substantially confined requirement, if you require him literally to be confined to his home, unable to leave his home under any circumstances, he's going to fall into the aid and attendance, which is a greater benefit. That's the very matter that Congress intended to address. But the Court has effectively addressed that issue, don't you think, in the opinion that you provided to us, saying that substantially confined does not mean you can never leave the house to go, for example, to a medical appointment. Precisely. The Court has already made clear that substantially confined doesn't mean wholly incapable under any circumstances of leaving the house. I believe that is indeed the holding, the import of how, yes. Do you see the Court in this case, having said something that's different from what the Court has said, I've forgotten the name of the case that you provided for us, but in the case that you provided for us. The Howell case, yes, I do think that Mr. Lusk's decision is not compatible with the Howell case, because Howell doesn't say that leaving for a medical appointment can't be considered in the substantially confined analysis. What Howell says is that by itself doesn't get it. That the mere fact of leaving for a medical appointment does not mean that the veteran is not substantially confined. So where Howell is perhaps a little bit frustrating to practitioners in understanding what it means and how to use it in other cases is that Howell does not offer us any guidance on what are those factors that should be considered when you determine is a departure, is leaving the house a departure sufficient to interfere, to break this substantially confined status. Ms. Wood, I think your time has expired. Thank you. We'll restore a couple minutes of rebuttal for you, and could you add two minutes to Ms. Orfield's time should she need to use it? Thank you, Your Honor. Then we'll keep things even. Ms. Orfield. Thank you, Your Honor. The main focus of Mr. Lusk's appeal was his claim that the Veterans Court improperly interpreted these two separate sets of statutory and regulatory provisions in denying his claim for special monthly compensation. Mr. Lusk's claim as an initial matter should be dismissed because this court lacks jurisdiction over his claims. Although he's characterized his claims as involving statutory and regulatory interpretation, he hasn't actually raised any legitimate interpretive dispute. Well, we've at least discussed the legal aspects this morning, what is the meaning of substantially confined. So can't we go there? We can certainly move on to that, Your Honor. The first supposed issue of interpretation raised by Mr. Lusk is the meaning ascribed to the phrase substantially confined as used to determine whether a veteran is permanently housebound for the purposes of awarding special monthly compensation. And as the Veterans Court recognized, the Board acknowledged the applicable standard and properly reached a decision after recounting several examples of the ways in which Mr. Lusk can leave the home, including spending time at his girlfriend's house, attending church, and visiting with friends. Mr. Lusk, however, disregards this analysis, arguing first that the Board misinterpreted substantial confinement as meaning total confinement, focusing in on the cursory statement in the Board's decision that Mr. Lusk is not prevented from leaving his home based upon his schizophrenia. Well, what is the standard? Excuse me. I've interrupted you twice now. It's your turn. What I wanted to ask, Ms. Warfield, if in fact the Howell case is a proper determination of the determination of substantially confined, which would limit the veteran to housebound limitations unless he or she could go out and earn an income, is that a correct determination by the court below in Howell? Or is that in conflict with the Lusk determination? I think those two decisions can be read in harmony. I think it's possible to say that in the Howell decision the court is only focusing in on the issue of whether leaving the house for medical treatment takes you out of the possibility of being substantially confined, and you see the court in Lusk doing a more careful analysis of the other kinds of reasons that a veteran might leave the home and looking more at how much really takes him out of being substantially confined. So I don't think the decision in Howell is necessarily in conflict with that. But the Secretary cited to the Senate report, which the court noted in Howell, and I'm quoting from the Howell case, which states specifically that Congress intended to provide additional compensation for veterans who were unable to overcome their particular disabilities and leave the house in order to earn an income, as opposed to an inability to leave the house at all. If that's a correct statement of congressional intent, isn't there really a conflict between a determination in Lusk versus Howell? Now, I think there's a couple things going on in your question. First of all, I think the Secretary actually, although the court has no reason to know this, the Secretary actually cited to the Senate report just for a different proposition, just to focus in on the language that it refers to veterans who are totally disabled whose activities are greatly restricted. And I'm actually reading from the brief that the Secretary submitted in the Howell case. So the Secretary didn't reference the Senate report for the same proposition that Mr. Lusk is referencing in the Senate report here. Of course, the Senate report was not really the basis for the court's decision in that case either, and the court certainly didn't go into this whole analysis of whether the veteran is able to leave the house to work that Mr. Lusk has raised now. In the Howell decision, the Howell decision just nearly looks at leaving the house for medical purposes. I'm not sure if I can answer your question, Your Honor. If substantially confined means that you can leave the house for medical purposes but not for earning purposes, does that make a difference? If it means that you can leave the house for medical purposes but you cannot leave the house for earning purposes, you cannot earn income, does that make a difference in the determination and the definition of substantially confined? Does that make a difference? As to how we should define substantially confined? Well, I mean, I think that that's an issue that the Veterans Court hasn't looked at in either of these cases, the income aspect of this. And I don't know that it would change the outcome of this case. I don't think Mr. Lusk has – I don't think the record necessarily shows that he's unable to leave his house to earn his income. I think there's some suggestion in the record that he's asked to be involved in vocational programs and did hold a job at one point. So I don't know that that issue has been looked at by the Veterans Court in either case, and I don't know that it would change the outcome of this case. Well, we don't know whether it would change the outcome at all, though. Should we remand it for that purpose? Well, I also would point out that that's a new argument that the focus on whether or not Mr. Lusk can leave the house for – whether or not a veteran can leave the house to work is a new focus, which is not what Mr. Lusk has argued up until this point. Mr. Lusk has simply argued that the analysis must look at the circumstances attendant to when the veteran leaves the house, whether he needs assistance and whether it's contrary to medical instructions. And I believe that was Mr. Lusk's argument even with the submission of Powell that he made in the cover letter. So today for the first time, we're hearing the argument that the real test should be whether or not he can leave the house to work. I don't think that's something that he's argued before, and I think it's a bit late in the day to suggest that that's really the key. Well, the other side of that coin is that sometimes you don't have to leave the house to work to earn income. You can earn it at home. That's true. A conflict with the statutory interpretation then? Well, I think that also raises a reason that perhaps the Senate report is not as important or as Mr. Lusk would have it be. It is a piece of legislative history. There is a principle I think the Supreme Court has laid out in a case called Shannon v. United States that says that you can't use legislative history to reach an interpretation of a statute or regulation that doesn't have an anchor in the language of that statute or regulation. And there's nothing about work in the statute or regulation. I think that Mr. Lusk is trying to do just that, contrary to Shannon v. United States. And I think the Court arrived at that, made that point very effectively through its questioning, showing how there's not a real nexus between whether somebody is able to work and whether somebody is substantially confined to their home. Well, of course, if somebody can work, at least in the sense of holding down a full-time job, that would seem to be perhaps the best evidence that they weren't permanently housebound, assuming the job was not, as Judge Gaiares' example, in the house. So at least in one direction, it seems to be a pertinent inquiry. The question is, does it apply in the other direction so that somebody who can't hold a job but can move freely throughout the community would, by virtue of the one inability to work, be deemed permanently housebound? And does the Senate report support that aspect of the congruence between the two concepts? And you say no. I say that it doesn't necessarily require, just the fact that the Senate report says that doesn't necessarily require that to be part of the analysis. It may be a valid factor that the Veterans Court could look at. I mean, if you found somebody who was actually working on a regular basis, that would be pretty much the end of the inquiry, as opposed to housebound, unless they were working at home. That does seem right, Your Honor. I don't know. Again, there doesn't seem to be a strong textual connection between those two concepts to me. But it may be a logical part of the broad analysis that comes to mind when you're looking at whether somebody is substantially confined. And it may be that, I mean, certainly the court reviewed everything that Mr. Lusk was doing and didn't note him working out, didn't specifically see that there was evidence along those lines. The second argument that Mr. Lusk makes is that the Veterans Court misinterpreted the requirements for special monthly compensation based on aid and attendance. Mr. Lusk contends he qualifies for SMC based upon aid and attendance, based upon the statutory criteria that he's so helpless as to be in need of regular aid and attendance, and the regulatory criteria that he requires care and assistance on a regular basis to protect himself from the hazards and dangers incident to his daily environment. The court's full analysis on this issue properly considered the details of whether Mr. Lusk has an actual need for aid and attendance to protect himself as required by the regulations. It determined he's able to spend days by himself without incident while his mother's at work, able to prepare simple meals. Well, here the regulation gives us a lot more to look at, doesn't it? It lists able to dress yourself, fix your own food, that general care for yourself is part of what goes into this, and there's a lengthy list. Is that list consistent with the regular aid and attendance of the statute? Well, I think a very helpful part of the regulation is that there's one provision that says there has to be a serious analysis of whether the veteran actually has an actual need for aid and attendance. It can't be just based on an opinion that he might, and I think that is really key to this case. Your answer to Judge Rader's question is yes, I think, right? The regulation does flesh out the statute. That's your position, right? I think that's true. And it's consistent with the statute. I think that's true. And you're also saying, I believe, that the statutory application really depends upon a multitude of factual inquiries in both cases, both in the substantially confined and in the regular aid and attendance. You're looking at a wide variety of factual inquiries to determine whether or not those statutory provisions are met. Yes, Your Honor. Now, Mr. Lusk has once again focused in on small pieces of the analyses at issue to argue that the administrative tribunal's implied improper standards. First, he relies on the Veterans Court's reference to the absence of a contrary medical opinion to suggest that the court was requiring an affirmative medical opinion on the ultimate legal issue. And the statement that Mr. Lusk relies on doesn't show that. Rather, it has to be viewed in context. The Veterans Court mentions the fact that there's no contrary medical opinion because Mr. Lusk had suggested to the Veterans Court that the medical records required a contrary outcome. Mr. Lusk also focuses in on two other factors discussed by the Veterans Court, the conditional nature of the examiner's statement and the noted improvement in Mr. Lusk's ability to protect himself, to again argue that the court is reading into the regulation standards that are not contained therein as a complete defense against granting a benefit while not making a determination by the regulations. If these standards were unrelated to the issue at hand, Mr. Lusk again would have only himself to blame because he is the one who drew the Veterans Court's attention to those specific parts of the record, and that's what the court is responding to. However, this part of the record does actually bear on the determination required by the regulation, and it supports the determination that was made. The fact that Mr. Lusk has not required aid and attendance in the past and that he shows improvement since these earlier reports does show that he doesn't have an actual need for aid and attendance now, and the fact that his potential for decompensation is contingent on events that are unlikely to transpire based upon the record, again, supports his view. And taken with the Veterans Court's affirmance of the detailed analysis that was done by the board that I mentioned earlier, and the board's consideration of specific arguments and concerns raised by Mr. Lusk, like his concern that he was having problems eating or leaving the home, there's no sense in which the board failed to consider whether Mr. Lusk had an actual need for aid and attendance, which is, of course, what's required by the regulation. For all of these reasons and for those set forth in the government's papers, the government asks that the court dismiss Mr. Lusk's claim to the extent it raises issues over which the court lacks jurisdiction, and otherwise affirm the decision of the Veterans Court. If the court has no further questions, I have nothing further. Thank you, Ms. Oakfield. Thank you, Your Honor. Ms. Booth, you have two minutes of rebuttal. Thank you, Your Honor. I have just two comments and will not abuse your kindness. First of all, regarding the aid and attendance criterion in the regulation, I'd like to point out that those are in the alternative. The error of the board, as well as the court, is that it relied on the absence of some of those criteria, which is irrelevant to whether he has the criteria that he was relying on, specifically whether his disability requires care and assistance to protect him from the hazards incident to his daily environment. That issue, of course, was supported by the very same medical examination that was relied on to deny the claim, where it addresses that because of his auditory hallucinations, he cannot safely cook meals. It just blanked out in my mind. There's a second factor that he's unable to shave, and he's unable to shave without someone being present. Those are the issues that, those are the facts that support, certainly, the last criterion about the hazards of his environment, but that legal criterion was not addressed by the court, or to the extent that it was, the court looked at the absence of others and ruled out, denied the criterion he actually did rely on. Finally, with regard to substantial confinement issue and the possibility of working at home, Judge Bryson, the more I think about this, I think that the answer simply is that substantial confinement benefits, once again, because the Senate report and the VA administrator's letter are intended to address loss of earning income. Therefore, one who is confined at home but able to earn an income just simply doesn't qualify for the enhanced compensation that House Bond is intended to provide. Thank you, Your Honors. Thank you, Ms. Booth. The court's going to take a recess to...